# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

Adele DeLoy *v.* Travelers Insurance Company, Appellant.

171      1|
35 SC ¹374
35 SC ¹376

171    1|
38SC ¹114

*Insurance — Accident insurance — Voluntary exposure to unnecessary danger.*

The words "voluntary exposure to unnecessary danger" in an accident insurance policy, mean an intentional exposure to unnecessary danger, and, in an action upon such a policy, it is proper for the court to charge that unless the assured "did it intentionally you cannot find that he exposed himself to danger within the terms of this exception. . . . It is very difficult, and in fact it is rarely the case that you can prove by positive evidence what a man's intentions were, and hence you must determine his intentions generally from his acts and conduct; and, it may be said that if a man acts so recklessly and carelessly that he shows an utter disregard of a known danger, then he may be said to have exposed himself voluntarily to danger. Or, if the risk of danger is so obvious that a prudent man, exercising reasonable foresight, would not have done the act, then he may be said to have voluntarily exposed his person to danger. It must also be exposed to unnecessary danger."

*Insurance — Accident insurance — "Roadbed" — Walking upon railroad tracks.*

A provision in an accident insurance policy relieving the company from liability where an injury occurs to the assured while "walking or being on a railroad bridge or roadbed," does not prevent the assured from being lawfully upon a railroad track, unless it be at such a time that he voluntarily exposes himself to danger by doing so.

In such a provision in the policy, "roadbed" does not mean the entire right of way, nor that part of it leveled off and constructed for the purpose

of putting a railroad track on, but the provision was evidently intended to exempt the insurer from accident to the insured while walking upon the railroad tracks and railroad ties, or, at least, so near that he would be likely to be hit by trains passing or repassing upon the railroad.

Argued March 20, 1895. Appeal No. 224, July T., 1894, by defendant, from judgment of C. P. Lycoming Co., June T., 1893, No. 204, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Assumpsit on an accident insurance policy for the death of plaintiff's husband. Before METZGER, P. J.

The policy in suit, in which plaintiff was named as beneficiary, contained the following clause :

" 5. This insurance does not cover disappearances; nor suicide, sane or insane; nor injuries of which there is no visible mark on the body (the body itself, in case of death, not being deemed such mark) ; nor accident, nor death, nor loss of limb or sight, nor disability resulting wholly or partly, directly or indirectly, from any of the following causes, or while so engaged or affected : Disease or bodily infirmity, hernia, fits, vertigo, sleep-walking, medical or surgical treatment, except amputations necessitated solely by injuries and made within ninety days after accident; intoxication or narcotics; voluntarily or involuntarily taking of poison, or contact with poisonous substances, or inhaling of any gas or vapor; sunstroke or freezing ; dueling or fighting, war or riot; intentional injuries (inflicted by the insured or any other person) ; voluntary overexertion ; violating law ; violating rules of a corporation ; voluntary exposure to unnecessary danger ; expeditions into wild or uncivilized countries ; entering or trying to enter or leave a moving conveyance using steam as a motive power (except cable cars) ; riding in or on any conveyance not provided for transportation of passengers ; walking or being on a railway bridge or road-bed (railway employees excepted)."

The evidence at the trial showed that Francis DeLoy, plaintiff's husband, was a lumberman, engaged in lumbering operations near DeLoy station, on the Jersey Shore and Pine Creek Railroad. At this station there was a small station house with a platform, but being a mere flag station there was no station agent to stop trains. The evidence tended to show that a flag

was kept in the station house, and it was the custom of persons wishing to stop a train to flag it. On October 10, 1892, the deceased flagged a train, and returned with the flag to the station side of the track, walked a few steps up the side of the track to take the train, when he slipped or stumbled and fell towards the track as the train approached, and was struck in the breast by the engine and instantly killed.

The engineer of the train testified as follows:

" Q. You said when you first saw him flagging the train he was standing on the track, and then he moved off outside the rail ? A. Yes, sir." On re-cross-examination the witness testified, " I thought he was off the end of the ties, and I thought we were going to clear him." The same witness further testified : " It seemed as though he slipped or something, but I thought his body was far enough to clear him—it seemed to me as though the man was going to clear it. It was quick done, but he seemed to kind of slip or something, and his body seemed to come closer to the bumper."

The court charged in part as follows:

It is contended that he lost his life, first, by voluntarily exposing himself to unnecessary danger; secondly, by walking or being upon the railroad bed at the time when the accident took place, and death resulted from it. What is meant by these provisions in this policy of insurance ?

[It is contended on the part of the defense that if there was any negligence on the part of Francis DeLoy, or in other words, if there was any such negligence as would have relieved the railroad company from liability, in case a suit would have been brought against them for damages, that such negligence is also a defense in this case, and amounted to voluntary exposure to unnecessary danger. We do not think that this is the law which will govern this case. We do not think that we can give any such meaning to this exception in the contract.] [2]

[But we say to you, gentlemen of the jury, that it means an intentional exposure to unnecessary danger, and that unless he did it intentionally you cannot find that he exposed himself to danger within the terms of this exception. Now, it is true that it is very difficult, and in fact it is rarely the case, that you can prove by positive evidence what a man's intentions

were, and hence you must determine the intentions of a man generally from his acts and conduct, and it may be said that if a man acts so recklessly and carelessly that he shows an utter disregard of a known danger, that then he may be said to have exposed his person voluntarily to danger.] [1]

Or if the risk of danger is so obvious that a prudent man exercising reasonable foresight would not have done the act, then he may be said to have voluntarily exposed his person to danger. It must also be exposed to unnecessary danger.

You have heard the facts in this case—the purpose of his going upon the railroad track was to flag a train in order to stop it. He had a lawful right to go upon the railroad track for the purpose of flagging the train. He was not there as a trespasser, yet if, when he got upon the railroad track, he found that there was danger, then it was his duty to immediately leave the track. If, after he got upon the railroad track, the train was in sight, and he saw the speed with which it was coming, he had no right to stand there until it was too late for him to retreat. The rule that would apply in such a case is that he had no right to be there any longer than a prudent man, in the exercise of reasonable care and caution, would have deemed necessary. If he stayed there longer than reasonable prudence would permit a man to stay in a case of that kind, after the danger became apparent to him, then, as a matter of course, his widow could not recover on this policy. Whether such is the fact or not it is for you to determine under all the evidence in this case, and in doing so you must take into consideration all the surrounding circumstances—the speed with which the train was running, the facilities for seeing the train and the distance at which it could be seen. The care that he exercised and the efforts that he made to get off, together with all the attendant circumstances, are proper matters for you to consider when you come to consider the question, whether this man was doing an act that a man of ordinary prudence would have done under like circumstances.

Another question that has been raised is that he was walking or was, at least, standing or being upon a railroad track or bed of a railroad at the time the injury occurred. It is alleged on the part of the defendant that it did not make any difference whether he was struck by the locomotive and killed while he

was actually between the tracks or even on the ties, so long as he was upon what is technically known as the roadbed; that he had no right whatever to be there, and was not within the protection of this policy while he was there in that position. Now, true it is, that in actions where the question would arise between railroad companies, or between them and their employees, or in reference to the construction of railroads, that technically the roadbed might cover the entire right of way, or at least that part of the right of way which was leveled off and constructed for the purpose of putting a railroad track on, and it might be ten feet in width, or it might be forty or fifty feet in width. With this contract in question the railroad companies have no concern whatever, nor does it affect any transaction with any railroad company, nor can the questions that might arise between the widow of the deceased and the railroad company have anything to do with this case, and we think that this contract must be construed just in the same manner as this company at the time they gave this policy had a right to expect that the assured would construe it. What had the company the right to expect, when they issued this certificate of insurance, that Francis DeLoy would understand by the wording of this exception in their policy? Would not they have a right to expect that he would construe it as it would be construed by the public generally; and people generally would understand by it that the roadbed was simply the road as constructed—or rather the ties upon which the rails lay, which might not be, as in this case, more than about eight feet in width; and we think it is a fair construction of this contract to say to you that that constituted what was undoubtedly meant by this policy. There could be no object in an insurance company preventing a man from going upon the right of way of a railroad company, because if he was away from the track and the ties far enough not to be reached by the engine and the cars, he could be in no danger more than any place else.

[The company evidently intended to be exempt from liability to accident resulting to persons while walking upon the railroad track and railroad ties, or, at least, so near that they would be likely to be hit by trains passing or repassing upon the railroad; and we think that is the construction you ought to

give to this contract, and say to you that it means parties being or walking upon the ties between the tracks, or on the ties outside of the tracks, (i. e., upon the ties upon which the rails are laid, outside of the rails,) all that space which would be covered, you may say, by the cars which would be running upon the tracks.] [8]

[And again it is evidently intended by this provision that it should not prevent the person from being lawfully upon a railroad track unless it was in a time of danger, when he voluntarily exposed himself to danger by doing it. It was certainly intended to mean that. Otherwise a person could not in safety cross a railroad track; if there were several sidings at a depot, for instance, and he had to cross one or the other to get into the train, and if an accident happened while he was getting in, they might say he could not recover, because he was on a railroad track at the time the injury happened. That construction would not be a fair one. I think it fair to assume that it was intended to cover all cases where a person is on a railroad bed when he had no business to be there, when it is not necessary for him to be there. But when his business or other necessities call him to the railroad track or crossing, for lawful purposes, and he is injured while in the pursuit of his lawful calling; or when it becomes necessary to use the roadbed for a lawful purpose, and he should be accidentally killed without any knowledge upon his part of the danger, he ought not, in such case, to be excluded from recovering if there was nothing else in the case.] [9]

Defendant's points were among others as follows:

2. That Francis DeLoy, the insured, was killed while standing on, or attempting to cross the track of the Jersey Shore & Pine Creek Railroad in front of a train that was approaching on the same track; that he was not impelled to thus stand on or attempt to cross the track by any imperious necessity; that the approaching train was visible from the point he occupied; that the whistle of the locomotive was blown; that his act was negligent and a voluntary exposure to an unnecessary danger. Therefore, the plaintiff is not entitled to recover, and the verdict must be for the defendant. *Answer:* Refused. The point assumes facts which it is the province of the jury to determine. It is not even a hypothetical case. [3]

3. That the insured, Francis DeLoy, stood on or so near the track of the Jersey Shore and Pine Creek Railroad in an effort to flag a train at DeLoy flag station, that he was struck by the locomotive of the train he was attempting to flag; that there were other places free from danger where he could have stood; that the approaching train was visible from the point he occupied; that the whistle of the locomotive was blown; that the injury he received by being struck by the passing train, which occasioned his death, was the result of his standing on or so near the track of the Jersey Shore & Pine Creek Railroad, and that the insured by so doing voluntarily exposed himself to an unnecessary danger. Therefore the plaintiff cannot recover, and the verdict must be for the defendant. *Answer*: We have to refuse this for the same reasons for which we refused the former point. These are facts that you are to find. If you find them that is one thing, although I cannot affirm this point, because I do not know whether the jury will find these facts or not. [4]

4. That if the insured, Francis DeLoy, did get off the track and slipped and fell back on the track, as claimed by the plaintiff, yet he stood on or near the track of the Jersey Shore & Pine Creek Railroad in front of an approaching train in an attempt to flag the same, which was visible from the point he occupied; that he was not impelled by any imperious necessity to thus stand on or so near the track, and the whistle of the locomotive was blown; that the slipping and falling back on the track was concurrent with the original negligent act of going on or near the track; that there was no new force, or agency, intervening; that there was an unbroken connection between the original negligent act of going on or near the track and slipping and falling back, which resulted in the injury which caused his death. Therefore the plaintiff is not entitled to recover, and the verdict must be for the defendant. *Answer:* We refuse this point. The jury must determine the facts from all the evidence in the case. [5]

5. That the act of Francis DeLoy, the insured, in standing on or so near the track of the Jersey Shore & Pine Creek R. R. Company as to be struck by an approaching train, plainly visible from the point he occupied, was the proximate cause of the injury received by being struck by the train, which resulted

in his death. Therefore the plaintiff is not entitled to recover, and the verdict must be for the defendant. *Answer :* Refused for the reasons already given for the refusing the previous points. [6]

6. That if Francis DeLoy, the insured, was struck by a mov ing train plainly visible from the point he occupied he is con-clusively presumed to have gone negligently into an obvious and unnecessary danger; the plaintiff is not entitled to recover, and the verdict must be for the defendant. *Answer :* We refuse this point. [7]

7. That the undisputed evidence in the case proves that the railway roadbed, at the point where DeLoy stood on the track of the Jersey Shore & Pine Creek Railroad when he was struck by an approaching train, extended to the south, where DeLoy stood, a distance of six feet from the outside rail where DeLoy stood, to the top of the embankment or to the top of the slope, and twelve and one half (12½) feet from the bottom of the slope, and the plaintiff having proved that DeLoy was struck on the right of his breast by the bumper of the locomo-tive, which extended eighteen inches from the rail, and that Mr. DeLoy was five feet six inches high, and therefore must have been on the railway roadbed when he was struck by the passing train, the plaintiff cannot recover, and the verdict must be for the defendant. *Answer :* We refuse this point. [10]

8. That under all the evidence the plaintiff is not entitled to recover, and the court is asked to direct a verdict for the defendant. *Answer :* We refuse this point. [11]

Verdict for plaintiff for $5,049. Defendant appealed.

*Errors assigned* were (1–11) above instructions, quo them.

*J. A. Beeber* and *John G. Johnson, Clarence E. Sprout* with them, for appellant.—When one is struck by a moving train which was constantly visible from the point he occupied, he must be conclusively presumed to have gone into an obvious and unnecessary danger : Myers v. Baltimore & Ohio R. R., 150 Pa. 386; McNeal v. Pittsburg & N. D. R. R., 131 Pa. 184 ; Marland v. R. R., 123 Pa. 487 ; Penna. R. R. v. Bell, 122 Pa. 64; Lees v. Phila. & Reading R. R., 154 Pa. 46.

The court below ruled that the same rule or principle of law that would control in an action for damages for injuries received by being struck by a moving train, would not be applicable to a case arising under an accident insurance policy.   In this the court erred : Burkhard v. Travelers Ins., 102 Pa. 262; Morel v. Miss. Valley Ins. Co., 4 Bush, 535 ; Lovell v. Accident Ins. Co., 3 Ins. Law Jour. 877 ; Sawtelle v. Ry. Pass. Ins. Co., 15 Blatch. 216 ; Tuttle v. Travelers Ins. Co., 134 Mass. 175.

It is respectfully submitted that the construction of the court below of the clause relating to walking upon tracks in a contract of insurance is too narrow, and could not have been so understood by the parties making the contract, because all human experience with regard to dangers incurred by an individual standing or being on a railway roadbed, or near the same, establishes the fact that, by reason of the action of the atmosphere created by a passing train, there is danger of being drawn under the train to one who stands off the ties and away from the same several feet.   It would be much more in harmony with the understanding of men, if it would be held that any distance far enough away from a moving passing train that was not beyond the influence of the action of the atmosphere, was within the definition or meaning of railway roadbed as used in this contract : Matthews v. Phila. & Reading R. R., 161 Pa. 28.

*Henry C. McCormick, Frank P. Cummings* and *Seth T. Mc-Cormick* with him, for appellee.—" Voluntary exposure " means intentional exposure to danger : Burkhard v. Travelers Ins. Co., 102 Pa. 262; Mfg. Accident Indemnity Co. v. Dorgan, 58 Fed. Rep. 945 ; Martin's Case, 32 Md. 310; Schneider v. Provident Life Ins. Co., 24 Wis. 28 ; Equitable Accident Ins. Co. v. Osborne, 9 Southern Rep. 869; Cotten v. Fidelity & Casualty Co., 41 Fed. Rep. 506 ; Marx v. Travelers Ins. Co., 39 Fed. Rep. 321; Pacific Mut. Life Ins. v. Snowden, 58 Fed. Rep. 343.

The company is not relieved from liability because Francis DeLoy was walking or being on a railway bridge or roadbed : Burkhard v. Travelers Ins. Co., 102 Pa. 268; Duncan v. Preferred Mut. Accident Assn., 36 N. Y. St. 928 ; Equitable Accident Ins. Co. v. Osborne, 9 Southern Rep. 869 ; Santa Clara Co. v. So. Pac. R. R., 118 U. S. 413.

OPINION BY MR. CHIEF JUSTICE STERRETT, October 7, 1895:

This action was brought on a life insurance policy issued by the defendant company to Francis DeLoy, husband of the plaintiff,—beneficiary therein named,—to recover indemnity for the accidental death of said assured.

The policy contains eight provisions relieving the company from liability, the fifth of which recites thirty-one different kinds of accident for which it is declared the company shall not be liable. Among these exemptions are the two following which practically constitute the only grounds of defense on which the defendant relies:

(1) "Voluntary exposure to unnecessary danger;" and (2), "Walking or being on a railway bridge or roadbed."

While the specifications of error are eleven in number, they each relate to one or both of these exemptions or grounds of defense, and hence it is unnecessary to notice them seriatim.

As to the first ground of defense, the learned president of the court below instructed the jury, inter alia, that voluntary exposure to unnecessary danger " means an intentional exposure to unnecessary danger;" and, unless the assured "did it intentionally you cannot find that he exposed himself to danger within the terms of this exception. . . . It is very difficult, and in fact it is rarely the case that you can prove by positive evidence what a man's intentions were, and hence you must determine his intentions generally from his acts and conduct; and, it may be said that if a man acts so recklessly and carelessly that he shows an utter disregard of a known danger, then he may be said to have exposed himself voluntarily to danger. Or, if the risk of danger is so obvious that a prudent man, exercising reasonable foresight, would not have done the act, then he may be said to have voluntarily exposed his person to danger. It must also be exposure to unnecessary danger."

This excerpt from the charge is the subject of specific complaint in the first assignment of error, and is involved in some of the others. It fairly represents the learned judge's construction of the clause first above quoted and is substantially correct, because it is in harmony with the ruling of this court, on the same clause, in Burkhard v. Travelers Insurance Co., 102 Pa. 262. In that case, Mr. Chief Justice MERCUR, referring to the assured, said: "It is true, he voluntarily left the car; but

a clear distinction exists between a voluntary act and a voluntary exposure to danger. Hidden danger may exist, yet the exposure thereto, without any knowledge of the danger, does not constitute a voluntary exposure to it. . . . The result of the act does not necessarily determine the motive which prompted the action. The act may be voluntary, yet the exposure involuntary. The danger being unknown, the injury is incidental."

The construction put upon the exempting clause in question by the court below is also in substantial accord with that given to similar phrases in other well considered cases, among which are: Mfrs. Accident Indemnity Co. v. Dorgan, 58 Fed. Rep. 945; Schneider v. Provident Life Ins. Co., 24 Wis. 28; Martin's Case, 32 Md. 310; Equitable Accident Ins. Co. v. Osborn, 9 South. Rep. 869; Marx v. Travelers Ins. Co., 39 Fed. Rep. 321; Pacific Mut. Life Ins. Co. v. Snowden, 58 Fed. Rep. 343. But, aside from rulings in similar cases, our own construction of the same clause in Burkhard's case, supra, ought to be conclusive.

As to the instructions relating to the second ground of defense, including the learned judge's answers to defendant's points for charge, we think they are also substantially correct and adequate. There is nothing in either of them that requires elaboration. The testimony tends to show that the deatn of the assured was the result of an accident that was fairly within the terms of the policy as properly construed by the court. The case was fairly submitted to the jury and in the light of all the testimony their verdict was fully warranted.

Judgment affirmed.