LIFE & CASUALTY INS. CO. v. GARDNER.—108 S. W. (2d), 1100.

Eastern Section.    July 3, 1937.

Petition for Certiorari denied by Supreme Court, October 3, 1937.

Crouch & Crouch, Price & Price, and Clarence Bradley, all of Johnson City, for plaintiff in error.

Glen M. Elliott and George N. Barnes, both of Johnson City, for defendant in error.

PORTRUM, J. ▮ This suit was filed in the circuit court of Washington county, at Jonesboro, and served upon a local agent in charge of the company's local office in Washington county, to reduce to judgment an insurance policy issued by the defendant at its home office in Nashville upon the life of Connie G. Gardner, Jr., deceased, a minor insured as a telegraph messenger boy. The defendant filed a plea in abatement to the jurisdiction of the court on the ground that the venue of the cause of action lay in the law court of Washington county, and not the circuit court, and that the law court had exclusive jurisdiction by reason of the residence of the party. A

stipulation of the facts arising under the plea was made and filed in the cause. The court overruled the plea and the case went to trial, resulting in a verdict for the plaintiff. The court's act in overruling the plea is assigned as error in this court. The question is not reviewable here for the reason that the stipulation of fact was not made a part of the bill of exceptions. It is true the paper is shown to have been filed in the lower court and it appears in the transcript, but it is not a part of the technical record, not having been entered upon the minutes, and it is not identified nor authenticated by the trial judge's signature to the bill of exceptions or otherwise. It is not a part of the record. Lyon v. Grant Crabtree, 16 Tenn. App., 42, 64 S. W. (2d), 24; McGhee v. Grady, 12 Lea (80 Tenn.), 89; McMillan Marble Co. v. Black, 89 Tenn. 118, 14 S. W., 479.

The policy of insurance was issued June 11, 1928, covering Connie G. Gardner, Jr., age eight years, and provided: ". . . this policy is intended to cover a telegraph or other messenger boy, if injured on the street while attending to the duties of his employment, whether standing still, walking or riding. . . ."

The insured was killed on the 5th day of September, 1936, while riding a bicycle upon the streets of Johnson City, returning to the office from the delivery of a telegraph message. He was riding rapidly down a grade on Buffalo street when the traffic light turned red in front of him and he forcibly applied the brakes of his bicycle, causing the rear wheel to skid, and at this time an automobile was entering upon the intersection of Buffalo and Nash streets, the intersection the insured was approaching, and this automobile passed over the intersection and continued down Ash street. The insured, because of his momentum, or the ineffectiveness of his brakes to hold, skidded his bicycle for a distance of 35 feet, and to avoid a collision turned his bicycle in the direction the intersecting automobile was traveling down Ash street, and, after entering upon Ash street, he continued to skid his rear wheel for a distance of half the width of the sidewalk. At this point he released his brakes, perhaps having his bicycle then under control, and continued down Ash street, following and passing the automobile, but as he passed the automobile the front wheel of his bicycle, for some cause, skidded from under him, throwing him off the wheel and against the moving car, striking his head upon some part of the windshield and fatally injuring him.

The company defends upon the italicized portion of the following quotation:

"This policy does not cover disappearance or injuries of which there is no visible contusions or wounds upon the exterior of the body of the insured . . . nor does it cover . . . loss sustained by the insured . . . while committing *some act in violation of law* . . ."

It is insisted that the insured entered into this intersection, turn-

ing to his right, at a time when the traffic light was red, and that he violated a city ordinance making it a misdemeanor to enter into an intersection against a red traffic light.

As the insured approached the intersection of Ash and Buffalo, he had crossed 150 feet away the intersection of Walnut and Buffalo where there was another traffic light, and, this block being a short one, these traffic lights were synchronized and showed red at both lights at the same time and also green at the same time, which had a tendency to cause traffic to speed up to cross the second light before the signal changed. The deceased was between the two when the lights changed, and he had to act with emergency in an attempt to prevent entering into the intersection while the light was red. He was unable to prevent entering into the intersection because of the insecurity or the defectiveness of his brake, and, as heretofore stated, he skidded his bicycle down this incline for 35 feet, turning to his right and following the automobile which had crossed the intersection before him, and, after releasing his brake about half the width of the sidewalk after he entered Ash street, he continued down Ash street for a distance of 24 feet before his front wheel skidded, throwing him against the car.

The jury returned a verdict in favor of the plaintiff for the face of the policy and interest, and also the 25 per cent. penalty, but the penalty has been eliminated. The principal assignment of error is that the trial court erred in declining to direct a verdict at the conclusion of all the evidence. The provision of the policy relied on as a defense by the defendant has been held to be a valid provision by the courts, in reference to adults. (We have found no case discussing its binding effect upon an eight year old messenger boy.) Southern Insurance Co. v. Mary Graham, 152 Tenn., 578, 280 S. W., 30. But there must be a causal connection between the unlawful act and the injury. Southern Insurance Co. v. Mary Graham, supra, and Insurance Co. v. Bennett, 90 Tenn., 256, 16 S. W., 723, 25 Am. St. Rep., 685. This provision of the policy applies to a city ordinance. Phoenix Indemnity Co. v. Barrett, 167 Tenn., 116, 67 S. W. (2d), 135.

The court is of the opinion that there is evidence from which the jury could logically conclude that the violation of the ordinance by entering into the intersection against the red light was too remote and the causal connection had been broken prior to the injury. When the boy released his brake after turning in the intersection, having applied it forcibly for more than 35 feet, it is reasonable to conclude that he had his bicycle then under control or otherwise he would have continued to apply the brake. The skid marks of the rear wheel of the bicycle were very legible and well established by the testimony. After releasing the brakes, he traveled 20 feet down Ash street, following or attempting to pass the car with his bicycle

under control when his front wheel skidded and he was thrown against the automobile. The jury may have concluded the skidding of the front wheel of the bicycle was an independent causation and the prime and proximate cause of the injury, and the jury might also have concluded that the proximate cause of this injury was the defective condition of the brakes on the bicycle. And but for these defective brakes the boy would have stopped his bicycle before entering the intersection and would not have suffered injury. If this be true, there is no way to work out the causal connection between the proximate cause of the injury and the violation of the ordinance.

■ The court is further of the opinion that the violation of law contemplated under the terms of the policy is an intentional violation of law by the insured. And accidental violation was not within the contemplation of the party.

"The exception includes only cases where the accident happens through the insured's voluntarily and intentionally being or walking on the roadbed and not where he was there by force of accident or involuntarily." Accidental Insurance, 1 C. J., section 156, p. 462.

Two cases are cited as authority for this text: DeLoy v. Travelers' Ins. Co., 171 Pa., 1, 32 A., 1108, 50 Am. St. Rep., 787, and Equitable Accident Ins. Co. v. Osborn, 90 Ala., 201, 9 So., 869, 870, 13 L. R. A., 267. In the latter case there was a provision against injury by a moving train while upon the track of the railway company and the insured while running toward the track stumbled and fell against the side of the engine of the passing train; the court held the exception inapplicable, saying:

"A fair and reasonable construction of the phrase in question is: Voluntarily and intentionally being or walking on the railway roadbed, not being there by force of accident, and involuntarily, for a mere comparative moment of time."

An analogous holding is available from our own case of Insurance Co. v. Bennett, supra. In that case the policy exempted the company from liability in case the insured was killed while engaged in a quarrel. The holding is stated in the sixth headnote as follows:

"The death of the insured does not fall within the exception contained in this clause of the policy unless it occurred as the result of a quarrel provoked by himself, and of such serious nature that he might reasonably have expected that anger would be aroused and violence inflicted. It is not every trivial dispute that is a quarrel within the meaning of this clause."

■ The court finds it unnecessary to construe the ordinance to determine if the boy in fact violated its provisions. The insistence that the trial judge should have directed a verdict at the conclusion of the plaintiff's evidence is waived. Gerber Co. v. Smith, 150 Tenn., 255, 263 S. W., 974.

We find no error in the judgment, and it is affirmed, with costs.

Ailor and McAmis, JJ., concur.