SOUTHERN FOUNDRY SUPPLY, INC., Petitioner,

*v.*

SPANG & COMPANY, Respondent.

470 S.W.2d 187

(*Knoxville*, September Term, 1970.)

Opinion filed July 6, 1971.

THOMAS O. HELTON, STOPHEL, CALDWELL & HEGGIE, Chattanooga, for petitioner.

JOHN T. HENNISS, WITT, GAITHER, ABERNATHY & WILSON, Chattanooga, for respondent.

PER CURIAM.

Southern Foundry Supply Co. Inc., a Tennessee corporation, sued Spang & Company, a Pennsylvania corporation, for breach of a lease contract, and obtained service of process by means of Tennessee's Long Arm Statute, sec. 20-235 T.C.A. Spang & Company challenged the process, and so the jurisdiction of the Court, by plea in abatement. (See Appendix 1). The plea in abatement was overruled, the case tried, and damages awarded Southern Foundry Supply, Inc.

Spang & Company appealed to the Court of Appeals on a transcript abbreviated by its designation in accordance with secs. 27-323, 324, 325 T.C.A., and Rule I of the

Rules of this Court, assigning the Chancellor's action in overruling the plea in abatement as error.

The Court of Appeals sustained the assignment of error, holding on the facts, (see Appendix 2), Spang & Company did not transact any business in Tennessee which would sustain the service of process, citing *Darby v. Superior Supply Company*, 224 Tenn. 540, 458 S.W.2d 423, and dismissed. This Court granted certiorari.

The transcript before the Court of Appeals contains only the part of the record designated by Spang & Company, and consists of the following:

1. The complaint.

2. The subpoena to answer with the return of service.

3. The plea in abatement.

4. The order overruling plea in abatement.

5. The Chancellor's memorandum opinion, filed December 5, 1969.

6. The final decree.

The designation concludes with the statement "We desire no other parts of the record or papers in said cause put into the transcript".

It will be observed from this designation, as appears from the transcript, that, there is not only no bill of exceptions, there is no record as to how the plea in abatement was heard by the Chancellor, whether upon demurrer or replication. See secs. 187, 188, The History of a Lawsuit, 8th Ed.

The order overruling the plea in abatement does not supply this latter omission. It reads:

"The plea in abatement of the defendant, Spang & Company, to the bill in this cause, coming on to be argued in open Court on March 10, 1969, and upon the brief filed by the complainant and upon the memorandum opinion which has been filed by the Court overruling the plea in abatement, now, thereupon, it is ORDERED and DECREED that the plea in abatement is overruled and that the defendant is allowed ten (10) days to answer the bill." Tr. p. 15.

From this order it appears that the Chancellor had already written the memorandum opinion overruling the plea in abatement at the time of the proceedings resulting in the order. Since the memorandum opinion of the Chancellor was not designated for inclusion in the transcript, and in fact is not in the transcript, it cannot be known whether the memorandum opinion was based on a demurrer to the plea in abatement or upon a replication, as to which there was no proof or stipulation, or both.

With the transcript in this condition there was no evidence before the Court of Appeals, just as there is no evidence before this Court, upon which error could be assigned to the Chancellor's decree overruling the plea in abatement, and no evidence to support the fact finding of the Court of Appeals on which its judgment was based. It is fundamental that review of any issue of fact depends upon a bill of exceptions authenticated by the trial judge or a minute entry, and that in the absence of one of these it is conclusively presumed the evidence was sufficient to justify the judgment. See cases annotated under sec. 27-109 T.C.A., Notes 8 and 17.

This Court is aware that no error has been assigned, either in the Court of Appeals or here, with respect to

the matter here considered. However, since a bill of exceptions cannot be supplied by action of the parties, but only by the trial judge, sec. 27-109 T.C.A. Note 6, no course is open to this Court except to notice the condition of the record as reflected by the transcript, and to reverse the judgment of the appellate court and reinstate the judgment of the lower court. It is so ordered.

APPENDIX 1.

"The defendant Spang & Company, for plea in abatement to the complaint filed against it in this cause, shows to the Court that:

"1. Spang & Company is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and having its principal office and place of business at 120 Etna Street, Butler, Pennsylvania, where its offices are located and its books and records are kept.

"2. Spang & Company is not registered or qualified to do business in Tennessee.

"3. Spang & Company has never appointed anyone to receive service of process in Tennessee.

"4. Spang & Company has at no time had any office or place of business in Tennessee.

"5. Spang & Company has at no time had any officer or managing or general agent in Tennessee.

"6. Spang & Company is engaged in the manufacture of drilling tools for the oil, gas, and water well drilling industries and refractory mortars and cements for the steel industry; in job machining; in the fabrication of light structural steel; and in the processing of steel mill slag, but it has at no time performed any of such busi-

ness in Tennessee, nor does it own or possess any assets in Tennessee.

"7. Spang & Company has never solicited any business in Tennessee or had any employee, bank account, loan payable, telephone, telephone listing, or business listing in Tennessee.

"8. Spang & Company has done no advertising in Tennessee.

"9. With specific reference to T.C.A. 20-235, the defendant has at no time engaged in, and the complaint does not arise from:

"(a) the transaction of any business within the State of Tennessee;

"(b) any tortious act or omission within the State of Tennessee;

"(c) the ownership or possession of any interest in property located within the State of Tennessee;

"(d) entering into any contract of insurance, indemnity or guaranty covering any person, property, or risk located within the State of Tennessee at the time of contracting; or

"(e) entering into any contract for services to be rendered or for materials to be furnished in the State of Tennessee.

"10. The complaint avers that the defendant sent an agent to Chattanooga to inspect the magnet in question sometime prior to leasing the same, but does not aver that this suit arises from such visit. In fact, the suit does not arise from such visit, and such visit fur-

nishes no basis for the exercise of jurisdiction over the defendant within the State of Tennessee.

"11. As conceded on the fact of the complaint, the only other pertinent actions of the defendant consisted of submitting a 'purchase order' for said magnet from Butler, Pennsylvania, and then accepting delivery of said magnet in Lorain, Ohio. The magnet subsequently proved defective and was picked up from the defendant in Lorain, Ohio, by the General Electric Company on behalf of, and on instructions from the complainant. The complainant then had said magnet returned to Tennessee, again by General Electric Company acting on its behalf. The complainant now charges that the defendant negligently used and abused said magnet in Lorain, Ohio, but wholly fails to allege any basis for jurisdiction over the defendant in the State of Tennessee. The defendant represents to the Court that no such basis exists in fact or in law.

"12. As further ground for its plea in abatement, the defendant states that this is a suit for unliquidated damages for injuries to property not resulting from a breach of oral or written contract, and that this Court, therefore, has no jurisdiction of the subject matter hereof."

APPENDIX 2.

*From the Opinion of the Court of Appeals*

"The facts necessary for a decision of this issue are undisputed by the parties. In the spring of 1968 the complainant nationally advertised the sale or lease of its used Stearns 65 inch lifting magnet. In late March or early April, 1968, an agent of the defendant came to the complainant's place of business in Chattanooga, Tennessee, for the purpose of inspecting the magnet. On

April 4, 1968, [after the agent returned to Pennsylvania and reported to company officials] Mr. J. C. Marinsky, buyer for Ferroslag, a division of Spang & Company, located in Butler, Pennsylvania, issued its purchase order No. 20061 to the complainant, Southern Foundry Supply, Inc., in Chattanooga, Tennessee. Under the terms of that purchase order the magnet was to be rented at a price of $800.00 per month. The purchase order also provided as follows.:

'This magnet to be in top operating condition when turned over to Ferroslag, and Ferroslag will return in the condition received, less normal wear.

'Ferroslag will be responsible for minor repairs and for any breakage or damage caused by negligence or abuse.

"In addition to the above, under a portion of the purchase order entitled 'Conditions of Purchase' the following condition is found:

"1. ACCEPTANCE. If this order is accepted, your acknowledgement indicating your acceptance of the order and all conditions herein stated, must be sent to buyer.

"Finally, under the terms of the purchase order the shipment of the magnet was to be F.O.B. Chattanooga, Tennessee.

"The magnet was shipped to the defendant in accordance with the terms of the purchase order, and the defendant kept the magnet for approximately two months. * * * After the magnet completely ceased to operate, the defendant returned the magnet to Birmingham, where it

was repaired at considerable expense to complainant. After settlement attempts failed, complainant brought this action for unpaid rent and for damage resulting from the defendant's abuse of the magnet.''

PER CURIAM OPINION ON PETITION TO REHEAR

A petition to rehear has been filed making the point that although this was a chancery case, reference was made to the History of a Lawsuit as authority for the Court's holding that there was no factual basis for the opinion of the Court of Appeals reversing the Chancellor.

Although it is true that both Gibson's Suits in Chancery, sec. 359, and T.C.A. sec. 21-608 provide for testing the legal sufficiency of pleas in abatement in chancery court by setting them down for argument, rather than by demurrer as at law, it does not follow that the opinion is wrong. A motion to set a plea for argument is, of course, in the nature of a general demurrer, Gibson's Suits in Chancery, sec. 359, Note 18, and our courts have disregarded the formal difference between the two pleadings by treating a demurrer filed in chancery as motion to set for argument, or by acting on it. *Witt v. Ellis,* 42 Tenn. 38, 40 (1865); *Klepper v. Powell,* 53 Tenn. 503, 506 (1871). The point of the original opinion was that the record was insufficient simply because it failed to show that the Chancellor's decision was solely on the legal sufficiency of the plea, regardless of what pleading was used to raise the question.

As we pointed out in our opinion, the Chancellor's order overruling the plea in abatement was based upon a memorandum opinion not included in the transcript. It therefore did not ''affirmatively show that the plea in abatement was heard on the question of its sufficiency

as a matter of law.'' and so we were compelled to reverse the Court of Appeals and affirm the decision of the Chancellor. *Motors Insurance Corp. v. Lipford,* 194 Tenn. 216, 250 S.W.2d 79 (1952).

We note further that the facts of this case as considered by the Court of Appeals, and as set out in the briefs filed by the present movant, differ from those of the plea in abatement, which could not be the case if the plea in abatement had been tried on its legality.

Although this Court greatly favors the policy of abbreviating records, we simply cannot presume to decide cases on facts not properly before the Court.

The petition to rehear is denied.